**UNITED STATES of America,**
**Libellant,**

**v.**

**7 CASES, 50 Boxes of 12 in 25 Pieces of Fireworks—CRACKER BALLS,**
**Claimant.**

**Civ. A. No. 65-H-362.**

United States District Court
S. D. Texas,
Houston Division.
May 6, 1966.

772

Woodrow Seals, U. S. Atty., and John H. Baumgarten, Asst. U. S. Atty., Houston, Tex., for libellant.

Presley E. Werlein, Jr., Houston, Tex., for claimant.

CONNALLY, Chief Judge.

This is a proceeding *in rem* initiated by the filing in this Court of a Libel of Information under the Federal Hazardous Substances Labeling Act, 15 U.S. C.A. § 1261 et seq. Certain articles of fireworks, styled "Cracker Balls", are the subject of this proceeding. The government alleges that the cracker balls in question are violative of the above named Act in that (1) they are a "hazardous substance" (as defined in § 1261(f) (1) (A) of Title 15, U.S.C.A.); (2) are housed in a "container suitable for household use" (as defined in 21 C.F.R. 191.1 (c)); and (3) that same was in a "misbranded package" (as defined in § 1261 (p) of Title 15, U.S.C.A.) when introduced and while in interstate commerce. By reason of such allegations, it is contended that the cracker balls are subject to condemnation under Section 1265 of the Act.

A cracker ball is a small and inexpensive article of fireworks. It is round in shape, though not perfectly so; and perhaps ¼ or ⅜ inch in diameter, and thus about the size of the eraser on the ordinary lead pencil. It is composed of a small quantity of gunpowder, particles of sand or flint in a paper mache coating. When thrown against a hard surface or when struck with an object, the cracker ball explodes with a loud noise. It is the weak and insipid little brother of the "torpedo" type of fireworks popular in my generation. Cracker balls are made in Japan and Taiwan, and are imported into the United States in large numbers.

The government contends that the cracker balls are dangerous because of a claimed tendency on the part of children to be injured thereby. No showing was made, or attempted to be made, of injuries from the ordinary use of the cracker ball. Because the cracker ball is approximately round, brightly colored, and bears a superficial resemblance to a jelly bean, a hard candy, or to a single kernel of a popular breakfast cereal, the government contends that there is a tendency on the part of a child of tender years to put the cracker ball in his mouth; and in the event the child bites down upon same, to cause it to explode and thus to cause an injury to the membrane of the mouth.

The government offered expert testimony as to the tendency of a child to put foreign objects in his mouth; and from various parts of the United States brought parents or other witnesses of some three or four incidents where such had occurred. The government also tendered in evidence a series of reports made by inspectors for the Pure Food

and Drug Administration who, from talking to parents, physicians, witnesses and from newspaper accounts, reported upon a total of 24 cases throughout the country where some such accidents are said to have occurred. In no case was the injury serious or of more than a few days duration. From industry figures, claimant has proved that almost three billion cracker balls have been imported in recent years, and argues that this is an exceedingly low incident of harm.

The cracker balls under seizure are packaged in small plastic envelopes, each of which contains ten cracker balls; an ordinary cardboard box (4½″ x 3″ x 1½″) contains perhaps 30 or 40 of such envelopes. The plastic envelope is marked "Cracker Balls—ICC Class C Common Fireworks—Japan". The cardboard boxes are similarly marked and also carry the legend, "Do Not Put in Mouth". Some of the boxes additionally are marked more fully and in compliance with (p) (1) of Section 1261 of the Act, giving the name of the manufacturer, the words "Danger" or "Caution", and other information as prescribed by the statute by virtue of a sticker or label pasted thereon.

■ I find that the cracker ball is a hazardous substance within the terms of (f) (1) (A) of Section 1261 in that it is flammable and generates pressure through decomposition, heat or other means. While the question is not at all free from doubt, I find that the cracker ball may cause a substantial personal injury as a proximate result of any customary or reasonably foreseeable handling or use. I find further that the cracker balls are "in a container intended or suitable for household use." Thus— to avoid being in a "misbranded package of a hazardous substance"—a "label" (as defined in § 1261 (n) of Title 15 U.S.C.A.) must be affixed. The label must meet the requirements of § 1261 (p) (1); and to be a "label" in the statutory sense, the printed matter must be affixed to the "immediate container". The immediate container is the plastic envelope. While marked in compliance with ICC regulations, it is not marked in full compliance with § 1261 (p) (1). Hence the cracker balls in suit are subject to condemnation.

The government contends, with much more vehemence than logic, that the "container" (which must bear the prescribed label) is not the plastic envelope containing 10 cracker balls; it is not the cardboard box which contains the 30 envelopes; but that the "container" is the paper mache shell which is a part of the cracker ball itself and which, of course, disintegrates when it is exploded by pressure or force. Thus, it is argued that each cracker ball must bear the extensive label prescribed by statute. This is patently impossible when the size, shape, and surface of the article is considered. I consider this contention utterly without merit. In my judgment, it is advanced not in a good faith effort to require compliance with the pertinent statute, but in the hope that a ruling may be secured under which compliance would be impossible. It might as well be argued that the "container" in which an olive is packaged and sold is its skin, rather than the jar in which it is packed; and hence that every olive must bear the prescribed legend. And all this because in the judgment of the administrators of the Act olives should be prohibited from the market because occasionally a person may choke upon a seed.

■ One further matter remains for disposition. Ruling on the admissibility of the reports of the inspectors regarding a number of injuries was reserved by the Court. The government contends that same is admissible under § 1733 of Title 28 U.S.C.A. The defendant objects that the reports are hearsay, which indeed they are. The reports are offered to prove the truth of the recitations therein contained, namely, that these accidents happened, and that they happened in the manner therein alleged. The inspectors obviously had no personal knowledge of these events, but gained their information from talking to various persons who purported to have such knowledge, and from newspaper reports.

It is noted that in some instances the firework concerned is referred to as "cap balls" and in other reports as "torpedoes". Whether these may have been the same as "cracker balls" is not made clear. The objection is sustained and the tendered exhibit is inadmissible. Yung Jin Teung v. Dulles, 229 F.2d 244 (2nd Cir. 1956); Olender v. United States, 210 F.2d 795, 42 A.L.R.2d 736 (9th Cir. 1954). See, Yaich v. United States, 283 F.2d 613 (9th Cir. 1960). A report of this nature based on second-hand hearsay does not become admissible under the statute simply because it may have reposed for a few days in a government filing cabinet. This matter is of no consequence in the disposition of the case, however, for a determination as to whether the cracker balls are properly labeled does not depend upon whether proof is made of four or of twenty-four accidents.

The foregoing is adopted as Findings of Fact and Conclusions of Law. Counsel for the libellant will present appropriate order condemning cracker balls in suit unless suitable arrangements may be made for proper labeling, which I suggest is a reasonably simple matter.